UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEON J. SETTY, 142227,

    Petitioner,                              Civil Action No. 2:16-CV-13065

vs.                                       HON. BERNARD A. FRIEDMAN

SHERRY BURT,

    Respondent.
_____/

**OPINION AND ORDER DENYING THE PETITION FOR A WRIT
OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE
OF APPEALABILITY AND LEAVE TO APPEAL *IN FORMA PAUPERIS***

        Leon J. Setty, ("Petitioner"), incarcerated at the Muskegon Correctional Facility in Muskegon, Michigan, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 [docket entry. In his *pro se* application, petitioner challenges his conviction for four (4) counts of third-degree criminal sexual conduct ("CSC III"), Mich. Comp. Laws § 750.520(1)(b). For the reasons stated below, the Court will deny petitioner's application.

**I.    Facts**

        Petitioner was convicted following a jury trial in the Oakland County Circuit Court. This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to § 2254(e)(1):

> [T]he victim testified that over the course of her stay in defendant Bennett's cabin, both defendants committed repeated acts of physical abuse, repeatedly uttered threats of death or physical harm toward her, her family members, and others, and that the threats kept the victim from leaving the cabin and kept her from disclosing or seeking help to escape defendants' physical and sexual abuse.

1

> ***
>
> With respect to the intent element, given the consistent nature of both defendants' physical abuse of the victim, threats of death and physical harm to the victim and others, and repeated acts of penetration of the victim (separately and together) in the cabin's mostly open space, the juries could reasonably find that at the time defendants gave aid and encouragement, they knew that their codefendant intended to unlawfully sexually penetrate the victim.

*People v. Bennett*, No. 299829, 2012 WL 6097317, at *2–3 (Mich. App. Dec. 6, 2012). Petitioner's conviction was affirmed on direct appeal. *Id.*; *lv. den.* 832 N.W.2d 235 (Mich. 2013).

Petitioner filed a post-conviction motion for relief from judgment, which was denied. *People v. Setty*, No. 10-230357-FH (Oakland Cty. Cir. Ct., June 17, 2014). The Michigan appellate courts denied petitioner leave to appeal. *People v. Setty*, No. 324955 (Mich. Ct. App. Mar. 12, 2015); *lv. den.* 873 N.W.2d 563 (Mich. 2016).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. Mr. Setty's Fourteenth Amendment right to due process of law was violated where the prosecution did not present sufficient evidence to prove beyond a reasonable doubt that Mr. Setty was guilty of aiding and abetting criminal sexual conduct.

II. The trial court should not have instructed on the theory of aiding and abetting. The prosecution never raised that claim until after the proofs were in. From the day of his arrest until after the proofs were closed, Mr. Setty was notified and defended against a charge that he directly committed the offense of criminal sexual conduct third degree. This instruction resulted in a compromise verdict where the jury convicted Mr. Setty because he was merely present.

III. The prosecutor's argument violated Mr. Setty's Fourteenth Amendment right to due process of law because it encouraged the jury to convict him based on sympathy for the alleged victim rather than to return a verdict based on the evidence presented at trial.

IV. Mr. Setty was denied effective assistance of trial counsel where his counsel failed to call as a witness a woman named Carol, who

2

would have supported the defense theory that alleged victim [J. G.] should not be believed.

V. Mr. Setty was denied effective assistance of counsel on appeal where appellate counsel failed to investigate and raise on appeal the claim of ineffective assistance of trial counsel.

## II. Standard of Review

Section 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state-court decision is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "a federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n.7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)).

**III. Discussion**

**A. Claim 1—Sufficiency of the Evidence**

Petitioner alleges the prosecution failed to allege evidence sufficient to prove beyond a reasonable doubt that he was guilty of aiding and abetting acts of criminal sexual conduct.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship,* 397 U.S. 358, 364 (1970). The critical inquiry on a sufficiency-of-the-evidence review is "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). This inquiry, however, does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." *Id.* at 334. "Instead, the relevant question is whether, after

viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 318–19.

The Court may not vacate a state-court decision rejecting a sufficiency-of-the-evidence claim merely because it disagrees with the decision. Instead, it may grant habeas relief only if the state-court decision was an objectively unreasonable application of *Jackson*. *Cavazos v. Smith,* 565 U.S. 1, 2 (2011). "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id.* For the Court, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 566 U.S. 650, 656 (2012). A state court's determination that the evidence does not fall below that threshold is entitled to "considerable deference under [the] AEDPA." *Id.*

Finally, the Court does not reweigh evidence or witness credibility. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony. *Neal v. Morris*, 972 F.2d 675, 679 (6th Cir. 1992). The Court must therefore defer to the fact finder for its assessment of witness credibility. *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003). The Court also does not apply the reasonable-doubt standard when determining the sufficiency of evidence on habeas review. *Walker v. Russell*, 57 F.3d 472, 475 (6th Cir. 1995).

Petitioner initially claims that there was insufficient evidence to convict him of aiding and abetting acts of CSC III.

Under Michigan law, a person is guilty of third-degree criminal sexual conduct (CSC III) if he engages in sexual penetration with another person and force or coercion is used to accomplish the sexual penetration. Mich. Comp Laws § 750.520d(1)(b). Force or coercion includes, but is not limited to, the following circumstances:

> (1) When the actor overcomes the victim through the actual application of physical force or physical violence;
>
> (2) When the actor coerces the victim to submit by threatening to use force or violence on the victim, and the victim believes that the actor has the present ability to execute these threats; or
>
> (3) When the actor coerces the victim to submit by threatening to retaliate in the future against the victim, or any other person, and the victim believes that the actor has the ability to execute this threat.

Mich. Comp Laws §§ 750.520b(1)(f)(i)–(iii), 750.520d(1)(b). "The existence of force or coercion is to be determined in light of all the circumstances and is not limited to acts of physical violence." *People v. Malkowski*, 499 N.W.2d 450, 451 (Mich. Ct. App. 1993). The term "force" includes the exertion of "strength or power on another person." *People v. Premo*, 540 N.W.2d 715, 717 (1995). "'[F]orce' encompasses the use of force against a victim to either induce the victim to submit to sexual penetration or to seize control of the victim in a manner to facilitate the accomplishment of sexual penetration without regard to the victim's wishes." *People v. Carlson*, 644 N.W.2d 704, 709 (Mich. Ct. App. 2002). The term "coercion" includes circumstances that create "a reasonable fear of dangerous consequences." *People v. McGill*, 346 N.W.2d 572, 576 (1984).

As the Michigan Court of Appeals noted in rejecting petitioner's claim, *see, Bennett*, 2012 WL 6097317, at *5, there were multiple grounds to support the jury's findings that petitioner committed four counts of CSC III as follows:

6

> Ample evidence also established that defendant Setty committed four counts of CSC III, two instances of "sexual intercourse" with the victim and two instances of fellatio by the victim. The victim testified that defendant Setty placed his penis inside her vagina against her will "[m]ore than five times[,]" and forced her to perform oral sex "[m]ore than five times[.]" This testimony was sufficient to allow a rational jury to find beyond a reasonable doubt that defendant Setty penetrated the victim at least four times by applying physical force. MCL 750.520d(1)(b); MCL 750.520b(1)(f)(i). Additionally, in light of the victim's description of repeated oral and vaginal penetrations by defendant Setty during the several weeks she resided in defendant Bennett's cabin, defendant Setty's repeated threats to kill or harm the victim or her family members, and her belief in the threats, a rational jury also could have found beyond a reasonable doubt that defendant Setty penetrated the victim by coercion, in violation of MCL 750.520b(1)(f)(ii) and MCL 750.520d(1)(b). Further, the evidence was sufficient to establish beyond a reasonable doubt that defendant Setty committed at least four acts of CSC III in violation of MCL 750.520d(1)(c) and MCL 750.520a(i), given (1) the victim's testimony regarding defendant Setty's multiple penetrations of her and his references to her father as retarded; (2) testimony by Martin that during a game of dominoes at the cabin, defendant Setty spoke to the victim "like she was retarded"; and (3) the testimony of several witnesses, Martin, Livingston, and Dr. Lacoste, that the victim's mental handicap or incapacity was readily apparent.
>
> The verdict form that the jury prepared concerning defendant Setty contained checks in the "guilty" boxes next to each of the four CSC III counts on which he stood trial. Next to the "guilty" boxes for each count, the jury handwrote, "Note: Aiding & Abetting." To the extent that the jury found defendant Setty guilty of the four charged CSC III counts as an aider and abettor only, ample evidence supported defendant Setty's guilt as an aider and abettor, for the reasons discussed in section I, *supra*.

*Bennett*, 2012 WL 6097317, at *5.

The record establishes that petitioner pushed his hand so far into the victim, J.G., that she bled. June 18, 2010, Tr. p. 48. J.G. also testified that petitioner placed his penis inside her vagina on more than five occasions, placed her over a wall when she tried to resist, and forced her

7

to perform oral sex on him more than five times. *Id.* at 49–50. The SANE witness testified that the injuries sustained by J.G. were consistent with forced sexual assault. June 22, 2010, Tr. p. 272.

The record also establishes that petitioner coerced J.G. using threats. J.G. testified that she did not leave because she "was scared cause they threatened to kill my family." June 18, 2010, Tr. p. 51. She also testified that both petitioner and his codefendant threatened her; said they could kill men, women, children, and old ladies because they did not care; and stated that they would rape or sexually assault anyone. *Id.* at pp. 51, 137, 146. J.G. testified that she was still afraid of them. *Id.* at p. 53.

The record establishes that petitioner knew or should have known that J.G. was mentally incapable. Paul Martin testified that when he returned to the cabin with his girlfriend, petitioner was making "rude little remarks" to J.G., like comments about "drippy wet panties," and "talking to her like she was retarded." June 17, 2010 Tr. p. 33. Dr. Lacoste testified that J.G. suffers from a developmental disability that leaves her capable of functioning like a ten to fourteen-year-old and that her disability is readily apparent upon meeting her. *Id.* at 144, 148, 163–164.

Based on this, the Michigan Court of Appeals found that there was ample evidence to sustain convictions for CSC III under three subsections to the statute.

While petitioner claims that the evidence was insufficient because the victim's testimony was not credible, an assessment of witness credibility is generally beyond the scope of federal habeas review of sufficiency-of-the-evidence claims. *Gall v. Parker*, 231 F.3d 265, 286 (6th Cir. 2000). The mere existence of sufficient evidence to convict defeats a petitioner's claim. *Id.* Because the petitioner's insufficiency-of-the-evidence claim rests on an allegation of the

victim's credibility, which is the province of the jury, petitioner is not entitled to relief on Claim 1. *See Tyler v. Mitchell,* 416 F.3d 500, 505 (6th Cir. 2005).

### B. Claim 2—Jury Instructions

Petitioner contends that the judge erred in giving the jurors an instruction on aiding and abetting when he was not charged as an aider/abettor.

The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack upon the constitutional validity of a state court conviction is even greater than the showing required in a direct appeal. The question "is whether the ailing instruction so infected the entire trial that the resulting conviction violates due process, not merely whether the instruction is undesirable, erroneous, or even universally condemned." *Henderson v. Kibbee*, 431 U.S. 145, 154 (1977) (quotation omitted). Further, "ambiguity, inconsistency or deficiency" in an instruction does not by itself "necessarily constitute a due process violation." *Waddington v. Sarausad*, 555 U.S. 179, 190 (2009). And "it is not enough that there is some 'slight *possibility*' that the jury misapplied the instruction." *Id.* at 191.

Under Michigan law, a jury does not violate due process when it convicts a criminal defendant charged only as a principal as an aider and abettor. *People v. Turner*, 540 N.W.2d 728, 733 (Mich. Ct. App. 1995) *overruled in part on other grounds by People v. Mass*, 628 N.W.2d 540 (2001). Likewise, in federal Court, a defendant may be indicted for the commission of a substantive crime as a principal offender and convicted of aiding and abetting, although the indictment does not name him as an aider and abettor, without violating due process. *Hill v. Perini*, 788 F.2d 406, 407 (6th Cir. 1986). It is not improper for a state trial court to instruct a jury on the elements of aiding and abetting, even if the petitioner was charged only as the principal. *Id.* at 408. *See also*

9

*O'Neal v. Morris*, 3 F.3d 143, 145 (6th Cir. 1993), *rev'd on other grounds sub nom O'Neal v. McAninch*, 513 U.S. 432 (1995).

The record shows that petitioner and his co-defendant threatened and abused J.G. on numerous occasions. June 18, 2010, Tr. pp 38, 42–45, 48–53. As a result, the trial court judge found that one defendant could have assisted the other defendant in abusing J.G. June 24, 2010, Tr. p. 93. J.G. also testified that petitioner and his co-defendant sometimes abused her at the same time. June 18, 2010, pp. 49, 53–54, 146.

> The Michigan Court of Appeals reasonably found:
>
> With respect to the intent element, given the consistent nature of both defendants' physical abuse of the victim, threats of death and physical harm to the victim and others, and repeated acts of penetration of the victim (separately and together) in the cabin's mostly open space, the juries could reasonably find that at the time defendants gave aid and encouragement, they knew that their codefendant intended to unlawfully sexually penetrate the victim.
>
> For these reasons, the trial court correctly instructed the jury with respect to aiding and abetting because a rational view of the evidence established that more than one person was involved in committing the charged crimes, and the individual defendant's roles 'in the crime may have been less than direct participation in the wrongdoing.'

*Bennett*, 2012 WL 6097317, at *3 (internal citation omitted).

Moreover, petitioner argued that there was no mistreatment going on when Paul Martin came to the cabin to remove J.G., June 24, 2010, Tr. p. 124, that J.G. often makes false allegations, *id.* at pp. 126–129, 136–139, and that J.G.'s perception of reality is affected by her mental illness, *id.* at pp 146–148. Thus, the aiding-and-abetting instruction was appropriate because the prosecutor "was entitled to respond to this defense by contending that it failed even

on its own terms through an aiding-and-abetting theory of liability." *Rashad v. Lafler*, 675 F.3d 564, 569–70 (6th Cir. 2012). Petitioner is not entitled to relief on Claim 2.

### C. Claim 3—Prosecutorial Misconduct

Petitioner alleges that the prosecutor committed misconduct by encouraging the jury to render a conviction based on sympathy for the victim, rather than based on the evidence.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004). A prosecutor's improper comments violate a criminal defendant's constitutional rights only if they "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quotation omitted).

Petitioner is not entitled to habeas relief on his third claim. First, the prosecutor's comment, even if it was an attempt to invoke sympathy with the jury, was relatively isolated, not extensive, and only a small part of the closing argument that focused on summarizing the evidence. This alone does not entitle petitioner to relief. *Byrd v. Collins*, 209 F.3d 486, 532 (6th Cir. 2000). Second, the trial court's curative instruction that the jury was not to let sympathy or prejudice influence its decision sufficiently countered any slight prejudice. June 24, 2010, Tr. p. 190. *Cockream v. Jones,* 382 F. App'x 479, 486 (6th Cir. 2010). Finally, even if the prosecutor's appeal was improper, this would be not render the trial fundamentally unfair, since the nature of the crime itself certainly produced juror sympathy even before the prosecutor made the comment. *See Millender v. Adams,* 187 F. Supp. 2d 852, 875–76 (E.D. Mich. 2002) (citing *Walker v. Gibson*, 228 F.3d 1217, 1243 (10th Cir. 2000)). Petitioner is not entitled to habeas relief on Claim 3.

### D. Claims 4 and 5—Ineffective Assistance of Counsel

The Court consolidates Claims 4 and 5 for the sake of judicial economy. Petitioner asserts that trial counsel was ineffective by failing to call a witness to attack J.G.'s credibility, and appellate counsel was ineffective by failing to investigate and raise a claim of ineffective assistance of trial counsel. Respondent argues that these claims are procedurally defaulted because petitioner raised them for the first time in his post-conviction motion, and he fails to show cause and prejudice for not raising these claims in his appeal of right, as required by M.C.R. 6.508(D)(3).

When "a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged" constitutional violation, "or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750–51 (1991). If a petitioner fails to show cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. 527, 533 (1986).

Michigan Court Rule 6.508(D)(3) provides that, absent a showing of good cause and prejudice, a court may not grant relief to a defendant if his motion for relief from judgment asserts claims which could have been raised on direct appeal. For purposes of a conviction following a trial, "actual prejudice" means that "but for the alleged error, the defendant would have had a reasonably likely chance of acquittal." M.C.R. 6.508(D)(3)(b)(i).

The Supreme Court has noted that "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar." *Harris v.*

12

*Reed*, 489 U.S. 255, 263 (1989). If the last state court judgment contains no reasoning, but simply affirms the conviction in a standard order, the federal habeas court must look to the last reasoned state court judgment rejecting the federal claim and apply a presumption that later unexplained orders upholding the judgment or rejecting the same claim rested upon the same ground. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

The Michigan Court of Appeals and the Michigan Supreme Court rejected petitioner's post-conviction appeal on the ground that he "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." These orders, however, do not cite subsection (D)(3), nor explicitly say that petitioner's failure to raise these claims on direct appeal is why the claims are rejected. Because the orders are ambiguous as to whether petitioner's claims were denied on the merits or were procedurally defaulted, they are "unexplained." *See Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010). Therefore, the Court must "look to the last reasoned state court opinion to determine the basis for the state court's rejection" of petitioner's claims. *Id.*

Here, the last reasoned state-court opinion is the trial court's June 18, 2014, denial of petitioner's motion for relief from judgment on procedural grounds. In that motion, petitioner raised two issues: trial counsel was ineffective for failing to investigate a witness named Carol, who would have impeached J.G.; and appellate counsel was ineffective on direct appeal for failing to raise this. *People v. Setty,* No. 10-230357-FH, at *1 (Oakland Cty. Cir. Ct., June 18, 2014). The court stated that because petitioner failed to raise the ineffective-assistance-of-trial-counsel issue on his direct appeal, under 6.508(D)(3), he could only succeed on his motion if he showed "either 'good cause' or 'actual prejudice.'" *Id.* at *2. One way to show good cause, the court said, was to

show his appellate counsel's ineffectiveness.[1] *Id.* After thoroughly discussing the issue, however, the court held that petitioner's appellate counsel was not ineffective for failing to raise trial counsel's effectiveness. *Id.* at *4. It reasoned that petitioner failed to show that (1) trial counsel's failure to call a particular witness named Carol was not sound trial strategy; (2) Carol's testimony was admissible; and (3) not further impeaching J.G. deprived him of a substantial defense. *Id.* at *3–4. In other words, petitioner's ineffective-assistance-of-trial-counsel claim was so weak that there was no particular reason for his appellate counsel to brief it on direct appeal. Because petitioner could not show good cause for failure to raise trial counsel's effectiveness on direct appeal, the court held that under 6.508(D)(3), his claims were procedurally defaulted. *Id.* Thus, Claim 4 is procedurally defaulted.[2] *Ivory v. Jackson,* 509 F.3d 284, 292–93 (6th Cir. 2007).

Of course petitioner could not have procedurally defaulted his ineffective-assistance-of-appellate-counsel claim on his direct appeal because state post-conviction review was the first opportunity he had to raise this claim. However, the state court held that petitioner's ineffective-assistance-of-trial-counsel claim was meritless. And appellate "counsel cannot be ineffective for a failure to raise an issue that lacks merit." *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001). Consequently, petitioner fails to show that appellate counsel's performance fell outside the wide range of professionally competent assistance by omitting his ineffective-assistance-of-trial-counsel claim. *See McMeans v. Brigano,* 228 F.3d 674, 682-83 (6th Cir. 2000).

Because petitioner has not demonstrated any cause for the procedural default of his ineffective assistance of trial counsel claim, it is unnecessary to reach the prejudice issue. *Smith*,

---

[1] So in a roundabout way, the court really considered both petitioner's claims.
[2] That the trial court also discussed the merits of petitioner's claims does not alter this analysis. *McBee v. Abramajtys*, 929 F.2d 264, 267 (6th Cir. 1991) (holding that the Court need not discuss the merits if the last state-court opinion expressly rested upon procedural default as an alternative ground, even though it also expressed views on the merits).

477 U.S. at 533. Additionally, petitioner has not presented any new reliable evidence to support any assertion of innocence which would allow this Court to consider his claim as a ground for a writ of habeas corpus in spite of the procedural default. Thus, a miscarriage of justice will not occur if the Court declined to review petitioner's defaulted claim on the merits. *Thirkield v. Pitcher,* 199 F. Supp. 2d 637, 654 (E.D. Mich. 2002).

Accordingly,

IT IS ORDERED that the petition for a writ of habeas corpus is denied.

IT IS FURTHER ORDERED that a certificate of appealability is denied because petitioner has failed to make a substantial showing of the denial of a federal constitutional right, 28 U.S.C. § 2253(c)(2), and leave to appeal *in forma pauperis* is denied because the appeal would be frivolous, 28 U.S.C. § 1915(a)(3).

Dated: April 5, 2018  
Detroit, Michigan  

s/Bernard A. Friedman  
BERNARD A. FRIEDMAN  
SENIOR UNITED STATES DISTRICT JUDGE

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 5, 2018.

s/Johnetta M. Curry-Williams  
Case Manager